## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| SUNCOAST POST-TENSION, LTD., ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No.  4:13-cv-03125 |
| ) | JURY TRIAL REQUESTED |
| PETER SCOPPA, ) | |
| SANDEEP N. PATEL, ) | |
| THE STERLING ENGINEERING ) | |
| GROUP OF COMPANIES, ) | |
| PT USA, and ) | |
| OTHERS UNKNOWN, ) | |
| ) | |
|    Defendants. ) | |

## ORIGINAL COMPLAINT

Plaintiff Suncoast Post-Tension, Ltd. files its Original Complaint against Defendants Peter Scoppa, Sandeep N. Patel, The Sterling Engineering Group of Companies, PT USA, and others unknown and would respectfully show as follows:

### I.   PARTIES

1.   Plaintiff Suncoast Post-Tension, Ltd. ("Plaintiff" or "Suncoast") is a limited company authorized to conduct business in Texas with its principal place of business at 509 North Sam Houston Parkway East, Suite 400, Houston, Texas 77060.

2.   Defendant Peter Scoppa ("Scoppa") is an individual residing at 727 Woodsboro Drive, Spring, Texas 77388.  He also conducts business in this district through his employer, Defendant PT USA.

3.   Defendant Sandeep N. Patel ("Patel") is an individual residing at 12802 Aspen Terrace Court, Cypress, Texas 77433.  He also conducts business in this district through his company, the Sterling Engineering Group of Companies.

4.      Defendant The Sterling Engineering Group of Companies ("Sterling") is a limited liability company organized under the laws of the State of Texas.  Sterling has its principal place of business at 17355 Village Green Drive, Jersey Village, Texas, 77040.  Sterling may be served with process by service upon its registered agent for service of process, Sandeep N. Patel, at 17355 Village Green Drive, Jersey Village, Texas, 77040.

5.      Defendant PT USA ("PTUSA") is a limited partnership organized under the laws of the state of Texas.  PTUSA has its principal place of business at 6125 West Sam Houston Parkway North, Suite 406, Houston, TX 77041 and/or 17355 Village Green Drive, Jersey Village, Texas 77040.  PTUSA may be served with process by service upon its registered agent for service of process, Sheena Danny, 1001 Texas Avenue, Suite 240, Houston, Texas 77002.

6.      One or more unknown persons are believed to have participated in the illegal conduct outlined below and they will be added as defendants when their identities are known.

## II.    JURISDICTION

7.      This Court has original subject matter jurisdiction over Suncoast's federal copyright infringement claim under 28 U.S.C. § 1338.  This Court has supplemental and pendent jurisdiction over Suncoast's state and common law claims under 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendants because they reside in this district and transact business in this district.

## III.    VENUE

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because all Defendants reside in Texas and this district, and a substantial portion of the acts or omissions giving rise to Suncoast's claims occurred in this district.

## IV.     FACTUAL BACKGROUND

10.     Suncoast is the foremost supplier of post-tensioning materials for buildings and foundations.  Throughout its history, Suncoast has developed at great cost a variety of highly proprietary and valuable knowledge, which it has sought to protect and keep confidential.  Its field installation drawings are recognized as the most comprehensive and highly-regarded in the industry.  In addition, throughout its history it has developed very valuable customer relationships, which it likewise desires to protect.

11.     Patel is the founder and majority or sole shareholder of Sterling.  Patel also serves as Chief Executive and Operating Officer of Sterling and wholly directs the strategic activities of the company.  Sterling is an engineering firm, which, until the recent formation of its subsidiary or affiliate PTUSA, had no particular involvement in concrete post-tensioning in the United States.  Rather than enter the post-tensioning field through legitimate means, Patel and his companies Sterling and PTUSA misappropriated Suncoast's trade secrets, proprietary information, and long-existing goodwill for their benefit.  On at least one occasion, Patel attempted to recruit a Suncoast high-level employee to accomplish this goal.  Patel, Sterling, and PTUSA recently accelerated their efforts by engaging in the wrongful conduct described below.

12.     Scoppa was an important long-term Suncoast employee who served as a sales manager for twelve years prior to suddenly resigning in October 2012.  Scoppa managed Suncoast's customer relations and prospective and pending contracts.  Scoppa had access to Suncoast's trade secret, proprietary, and confidential information, including at least know-how, design information, technical information, drawings, cost and pricing information, customer lists, and all sales data.

13.     On or about October 1, 2001, Scoppa signed a "Hiring Form" (Attached as Exhibit A), which contained the terms and conditions of his employment.  Specifically, Scoppa agreed to the following terms:

> 2. Employee agrees not to reveal to any person, firm, or corporation any information concerning Employer's inventions, processes, experiments, business practices or plans, or any other information the secrecy or confidentiality of which is useful to the business of Employer without first obtaining the Employer's written authorization.
> …
> 5. If employment terminates, Employee agrees to return or deliver to Employer all of Employer's property in Employee's possession or control — including, but not limited to, all tangible forms of any information described in paragraph 4.

Exhibit A at ¶¶ 2, 5.

14. In addition to the contractual obligations described in paragraph 13, above, Defendant Scoppa owed Suncoast a duty of loyalty as its employee to act in its best interest while employed by it and further (as a possessor of its proprietary and trade secret information) owed Suncoast a fiduciary duty with respect to such information and a duty not to use or disclose such information.

15. While still employed by and unbeknownst to Suncoast, on October 1, 2012, Scoppa entered into an Employment Agreement (Attached as Exhibit B) to serve as President of PTUSA, a start-up company founded by Defendants Patel and his company Sterling that would directly compete with Suncoast in the United States.

16. Thereafter, in October 2012, while at an out-of-town technical conference on behalf of Suncoast, Scoppa suddenly and without notice resigned from Suncoast. Scoppa's employment with PTUSA was discovered by Suncoast immediately after his resignation because his PTUSA Employment Agreement was sent to him through his Suncoast email account.

17. On or about April 22, 2013, one of Suncoast's clients, Rago Enterprises LLC ("Rago"), emailed a set of drawings he thought were Suncoast's to Ray Hietikko, a Senior Project Coordinator at Suncoast. In reality, these drawings were just bogus imitations of Suncoast's copyrighted drawings, produced by copying Suncoast's drawings and changing the name on the drawings from Suncoast to PTUSA. The copied drawings even contained the same

typographic errors in the notes.  It became clear to Suncoast that Scoppa stole Suncoast's field installation drawings and passed them off as PTUSA's.

18.     Soon thereafter, on April 26, 2013, Suncoast sent Defendants Scoppa and PTUSA a cease and desist letter regarding Scoppa wrongfully using Suncoast's proprietary information, including the drawings in question.

19.     Scoppa replied on April 30, 2013 via email indicating that certain plans and most of the details on the drawings were industry standards.  In support of this, he forwarded an email from Christian, dated April 10, 2013, with sample drawings that Christian used to solicit business from Scoppa and PTUSA.  These drawings also were copies of Suncoast's drawings—some were even wholesale copies.  The drawings referenced Suncoast by name and, in at least one instance, retained the Suncoast file name.  Because of this and the fact that Scoppa is intimately familiar with Suncoast's drawings, Scoppa was on notice that the drawings Christian sent to him contained Suncoast's property.

20.     Christian is no stranger to Suncoast.  While he touted his experience in post-tension detailing in his April 10, 2013 email to Scoppa, Christian gained experience in this area by providing engineering services to Suncoast through Suncoast's subcontractor in India, Concord Marketing Services ("Concord").  In the capacity of a consultant to Suncoast, Christian served as a fiduciary and agent of Suncoast.  Suncoast entrusted Christian with access to Suncoast's proprietary and confidential files while he served in this role.  He also obtained Suncoast's trade secret and confidential information in a fiduciary capacity and was not authorized to disclose or use such information other than for performing engineering services for Suncoast.

21.     Any information that Suncoast provided to Christian remained the property of Suncoast even after he ceased working for Suncoast.  Thus, Christian wrongfully used and

disclosed at least the drawings he provided to Scoppa and PTUSA, amounting to at least conversion and breach of his fiduciary duty to Suncoast as a possessor of its proprietary information.

22.     While still employed by and unbeknownst to Suncoast, Scoppa made plans and conspired with the Defendants to wrongfully compete with Suncoast by stealing Suncoast's trade secret, proprietary, and confidential information, including at least know-how, design information, technical information, drawings, cost and pricing information, customer lists, and sales data. When his employment terminated at Suncoast, he, acting as an agent of PTUSA, Patel, and Sterling, knowingly retained such information without authorization.

23.     Thereafter, while working as President of PTUSA and as an agent of the Defendants, Scoppa wrongfully disclosed and used this information and used the Suncoast drawings that Christian improperly disclosed to him, as well as trade secret and confidential information to be revealed during discovery, to solicit business for PTUSA. This conduct amounts to at least breach of Scoppa's employment contract, trade secret misappropriation, conversion, unfair competition, and breach of his fiduciary duties to Suncoast.

24.     Defendant Patel in the course and scope of his role as Principal and owner of PTUSA, a subsidiary or affiliate of his company Sterling, directed and ratified the actions of Scoppa identified in the above paragraphs. Additionally, he used at least two of Suncoast's engineering consultants in India, including Christian, to obtain Suncoast's trade secret, confidential, and proprietary information rather than develop this information himself.

## V.     CAUSES OF ACTION

### A.     Copyright Infringement-All Defendants

25.     The paragraphs above are expressly incorporated herein.

26.     Suncoast is the owner of the registered copyrights in the post-tensioning drawings at issue ("Copyrighted Works") with the following Registration Numbers:

| VAu001142728 | VAu001142718 | VAu001142644 | VAu001142686 |
| --- | --- | --- | --- |
| VAu001142682 | VAu001142689 | VAu001142692 | VAu001142694 |
| VAu001142696 | VAu001142698 | VAu001142303 | VAu001142730 |
| VAu001142680 | VAu001142304 | VAu001142706 | VAu001142704 |
| TXu001864748 | VAu001142653 | VAu001142744 | VAu001142758 |
| VAu001142755 | VAu001142748 | VAu001142649 | VAu001142700 |
| VAu001142754 | VAu001142751 | | |

27. Defendants knowingly, willfully, intentionally, and deliberately infringed Suncoast's exclusive rights in the Copyrighted Works by copying the Copyrighted Works and passing them off as their own and distributing them to others without Suncoast's authorization.

28. Defendants' copyright infringement has caused, and will continue to cause, Suncoast to suffer substantial injuries.

29. As a result of this infringement, Suncoast is entitled to recover, among other things, injunctive relief, money damages, punitive damages, and its costs and fees in this action.

**B.     Breach of Contract - Scoppa**

30. The paragraphs above are expressly incorporated herein.

31. On October 1, 2001, Scoppa signed the Hiring Form.

32. The Hiring Form is a valid and binding contract.

33. The Hiring Form includes Scoppa's promise not to reveal without authorization any of Suncoast's information. (Exhibit A at ¶ 2).

34. Scoppa, acting as an agent of the Defendants, breached this agreement by taking and revealing Suncoast's information to others, including Rago and Defendants. This information included, among other things, proprietary, confidential, and trade secret information.

35. The Hiring Form also includes Scoppa's promise to return or deliver to Suncoast all of Suncoast's property in his possession or control if his employment terminates. (Exhibit A at ¶ 5).

36. Upon information and belief, Scoppa breached this agreement by taking Suncoast's information with him upon his termination, copying it, and passing off Suncoast's work as PTUSA's to others, including Rago.

37. As a natural, probable, and foreseeable consequence of Scoppa's breaches, Suncoast has suffered and continues to suffer damages for which Scoppa is liable, including lost profits, loss of customers, and loss of future business opportunities and goodwill.

38. Suncoast is entitled to injunctive relief to prevent imminent and irreparable harm in the future for which it has no adequate remedy at law.

## C.     Misappropriation of Trade Secrets – All Defendants

39. The paragraphs above are expressly incorporated herein.

40. During the course and scope of Scoppa's employment with Suncoast, Suncoast provided Scoppa with proprietary, confidential, and trade secret information, including at least Suncoast's drawings, designs, know-how, plans, proposals, customer lists, job bid information, costs and pricing information, and sales data.

41. This information is used in the operation of Suncoast's business and gives Suncoast a competitive advantage over others in the industry.

42. Given the competitive industry and confidential nature of the information given to Scoppa while he was employed by Suncoast, he had a confidential relationship with Suncoast that also gave rise to certain fiduciary obligations. He also had a common law duty not to misappropriate such information. In addition, as detailed above, Scoppa contractually promised to not reveal this information without authorization and to return this information after his employment terminated.

-8-

43. Upon information and belief, Scoppa, without authorization, took Suncoast's trade secret, proprietary, and confidential information with him after he terminated his employment with Suncoast. He also, without authorization, disclosed this information to others, including Defendants. Scoppa was acting as an agent of Defendants PTUSA, Patel, and Sterling when he committed such conduct or such Defendants ratified this conduct.

44. Suncoast has suffered and continues to suffer damages that are proximately caused by and that are a natural, probable, and foreseeable consequence of Defendants' use and disclosure of Suncoast's trade secrets and confidential information. As a result of such conduct, Suncoast has suffered or will suffer damages for which Defendants are liable, including lost profits, loss of customers, and loss of future business opportunities and goodwill.

45. Suncoast is also entitled to injunctive relief to prevent imminent and irreparable harm in the future for which it has no adequate remedy at law.

**D.   Conversion – All Defendants**

46. The paragraphs above are expressly incorporated herein.

47. Suncoast rightfully owns, and has the right to immediate possession of the Suncoast documents that Defendants misappropriated.

48. Defendants, without Suncoast's authorization, have wrongfully disclosed, used, and derived information and property from Suncoast's documents. Defendants have no right of possession to this information, as Scoppa's and Christian's rights of possession ceased when they stopped working for Suncoast.

49. Defendants' conduct deprived Suncoast of its rightful ownership.

50. Suncoast has suffered serious damages by Defendants' conversion.

**E.   Breach of Fiduciary Duty and Inducement of Breach of Fiduciary Duty – All Defendants**

51. The paragraphs above are expressly incorporated herein.

52. As possessors of Suncoast's trade secret, proprietary, and confidential information, Scoppa and Christian owed Suncoast a fiduciary duty not to misappropriate such information.

53. Scoppa, during his employment as a Suncoast Sales Manager, also owed Suncoast a duty of loyalty to act in Suncoast's best interest and to not divulge Suncoast's trade secrets or steal its information, which continued after he resigned from Suncoast.

54. Scoppa breached his fiduciary duties to his and the benefit of the Defendants by appropriating Suncoast's information, including trade secret, proprietary, and confidential information, which he used to solicit business on behalf of PTUSA, a competing company. Scoppa also knew it was a breach of Christian's duty to misappropriate Suncoast's trade secret, proprietary, and confidential information. Yet, Scoppa induced and participated in Christian breaching this duty.

55. Defendants Patel and his companies Sterling and PTUSA have induced breach of Scoppa and Christian's fiduciary duties described above. They have each done so by knowingly soliciting, participating in, and profiting from each such breach.

56. As a result of such breaches induced by Defendants and breach of fiduciary duty by Scoppa, Suncoast has suffered or will suffer damages for which Defendants are liable, including lost profits, loss of customers, and loss of future business opportunities and goodwill.

57. Suncoast is also entitled to injunctive relief to prevent imminent and irreparable harm in the future for which it has no adequate remedy at law.

**F.     Tortious Interference with Employment Contract – PTUSA, Patel, Sterling**

58. The paragraphs above are expressly incorporated herein.

59. Suncoast had a valid employment contract with Scoppa.

60. Defendants PTUSA, Patel, and Sterling knew of this contract.

61. Defendants PTUSA, Patel, and Sterling have willfully and intentionally interfered with Suncoast's contract with Scoppa.

62. As a result of Defendants' tortious interference, Suncoast has suffered serious damages.

### G. Tortious Interference with Existing and Prospective Business Relations – All Defendants

63. The paragraphs above are expressly incorporated herein.

64. Suncoast had existing and prospective business relationships that had not yet been reduced to contracts with several clients.

65. The Defendants knew of these existing and prospective relationships and continuing business relationships.

66. The Defendants have willfully and intentionally interfered with Suncoast's existing and prospective business relationships and continue to do so through the tortious conduct described herein.

67. As a result of Defendants' tortious interference, Suncoast has suffered and will suffer serious damages for which Defendants are liable, including lost profits, loss of customers, and loss of future business opportunities and goodwill.

68. Suncoast is also entitled to injunctive relief to prevent imminent and irreparable harm for which it has no adequate remedy at law.

### H. Unfair Competition

69. The paragraphs above are expressly incorporated herein.

70. As described above, Suncoast's drawings are the product of Suncoast's extensive time, labor, skill and money.

71. Instead of developing drawings of their own, Defendants simply stole Suncoast's drawings and passed them off as their own. By doing so, Defendants misled customers into

believing the drawings they sent were of equal technical quality and effort as Suncoast's. Customers thought that Defendants' drawings were so closely aligned with Suncoast's that they misappropriated Suncoast's goodwill. By misappropriating Suncoast's work, Defendants also gained an unlawful advantage (i.e. a free ride) because Defendants were burdened with little or none of the expense incurred by Suncoast.

72. As a result of Defendants' unfair competition, Suncoast is suffering large financial losses.

### I. Conspiracy – All Defendants

73. The paragraphs above are expressly incorporated herein.

74. The Defendants and unknown others acted together pursuant to an agreement to accomplish an unlawful objective by unlawful means. They conspired to steal and use unlawfully Suncoast's confidential, proprietary and trade secret information, to unfairly compete with Suncoast, to breach fiduciary duties to steal Suncoast's customer, to tortiously interfere with Suncoast's prospective business relations, and to breach and induce breach of Scoppa's employment contract as set forth above. The Defendants committed numerous overt acts to accomplish their illegal objectives. Because they conspired, the acts, words, and deeds of each conspirator are the acts, words, and deeds of every Houston Defendant.

75. This illegal conspiracy has proximately caused Suncoast to suffer large monetary losses.

### VI. REQUEST FOR JURY TRIAL

76. Suncoast requests a jury trial and tenders the appropriate fee with this petition.

### VII. PRAYER

77. Upon trial on the merits, Suncoast requests that it be awarded its damages and attorneys' fees pursuant to Texas Civil Practice and Remedies Code § 38.00 et seq. and §

134.005(b) as well as pre- and post-judgment interest thereon.  Suncoast specifically requests damages consisting of:

(i) Actual damages and any profits of Defendants from Defendants' infringement of the Suncoast's Copyrighted Works, as provided by 17 U.S.C. § 504(b); or, upon Suncoast's election prior to a final decision by the Court, statutory damages as provided by 17 U.S.C. § 504(c), in an amount to be determined at trial;

(ii) The entirety of the amount of money that Defendants have realized world-wide in anything related to concrete post-tensioning including derivative work received as a result of entering this field;

(iii) The lost revenue and profits from the jobs Suncoast lost due to Defendants' wrongful conduct;

(iv) Damages for the reasonable value of the information Defendants took from Suncoast, including development costs;

(v) The exact amount of damages, expected to be several million dollars, will be added by later amendment;

(vi) All other damages that Suncoast suffered from the Defendants' wrongful conduct;

(vii) An award of exemplary damages; and

(viii) Such other and further relief as the Court may deem appropriate.

78. Suncoast also seeks a permanent injunction enjoining Defendants and all those in privity with them from using, selling, providing, disclosing, or profiting from Suncoast's copyrighted works, trade secret, proprietary, and confidential information; and

WHEREFORE, premises considered, Plaintiff Suncoast respectfully requests the relief prayed for above, together with such other and further relief as to which it is entitled.

Dated:  October 23, 2013        Respectfully submitted,

**WINSTON & STRAWN LLP**

By:   */s/ John R. Keville*
        John R. Keville (attorney-in-charge)
          Texas State Bar No. 00794085
          So. District of Texas Bar No. 20922

-14-

   jkeville@winston.com
John E. O'Neill
  Texas State Bar No. 15297500
  So. District of Texas Bar No. 2813
 joneill@winston.com
Erin C. Villaseñor
  Texas State Bar No. 24072407
  So. District of Texas Bar No. 1114483
 evillasenor@winston.com
Texas State Bar No. 00794085
1111 Louisiana, 25th Floor
Houston, Texas 77002-5009
Tel: (713) 651-2600
Fax: (713) 651-2700

**ATTORNEYS FOR PLAINTIFF**
**SUNCOAST POST-TENSION, LTD.**