| | | |
|---|---|---|
| SUNCOAST POST–TENSION, LTD., *Plaintiff* | § § § § § § § § § § § | |
| vs. | | Civil Action No. |
| PETER SCOPPA, SANDEEP N. PATEL, THE STERLING ENGINEERING GROUP OF COMPANIES, PT USA, and OTHERS UNKNOWN, *Defendants* | | 4:13-CV-03125 |

## DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE VANESSA D. GILMORE:

COMES NOW, Defendants PETER SCOPPA ("Scoppa"), SANDEEP N. PATEL ("Patel"), THE STERLING ENGINEERING GROUP OF COMPANIES ("Sterling"), and PT USA, who file this, their *Defendants' Motion to Dismiss* ("Motion") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and in support thereof would respectfully show the Court the following:

### I. Factual Background

1.  In its *Original Complaint*, ECF No. 1 ("Complaint"), Plaintiff SUNCOAST POST–TENSION, LTD. ("Suncoast") alleged the following facts:

2.  Defendant Scoppa was at one time employed by Suncoast but resigned in October 2012.[1] During his employment at Suncoast, he allegedly had access to Suncoast's "trade secret,

---
[1] Complaint at ¶ 12.

proprietary, and confidential information".[2] At the commencement of his employment with Suncoast, he signed a <u>Hiring Form,</u> attached as Exhibit A to the Complaint.[3]

3.  On or about October 1, 2012, Scoppa entered into an <u>Employment Agreement with Peter Scoppa</u> ("PT USA Agreement"), attached as Exhibit B to the Complaint, which provided that he would serve as PT USA's President.[4] PT USA was a company founded by Defendants Patel and Sterling.[5] Scoppa resigned from Suncoast sometime in October 2012.[6]

4.  On or about April 22, 2013, one of Suncoast's clients, Rago Enterprises LLC ("Rago") emailed Suncoast drawings which Rago thought belonged to Suncoast.[7] These drawings had the PT USA name on them, but were just drawings that belonged to Suncoast with just the name changed.[8]

5.  On April 26, 2013, Suncoast sent Scoppa and PT USA a cease and desist letter regarding these drawings.[9] On April 30, 2013, Scoppa replied via email that "certain plans and most of the details on the drawings were industry standards".[10] In support of his contention, Scoppa forwarded an email from a Christian with sample drawings; whoever was this person named Christian, he apparently used these sample drawings to solicit business from Scoppa and PT USA.[11] Christian's drawings were copies of Suncoast's drawings.

---

[2] <u>Id.</u>
[3] <u>Id</u>. at ¶ 13.
[4] <u>Id</u>. at 15.
[5] <u>Id</u>.
[6] <u>Id</u>.
[7] <u>Id</u>. at 17.
[8] <u>Id</u>.
[9] <u>Id</u>. at 18.
[10] <u>Id</u>. at 19.
[11] <u>Id</u>.

6. Christian was apparently a person who gained experience in Suncoast's business by providing engineering services to Suncoast's Indian subcontractor.[12] Christian apparently obtained Suncoast's proprietary information while providing those services.[13]

## II. Argument

**A. Legal Standard for failure to state a claim under Rule 12(b)(6)**

7. Rule 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 672, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Id. A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).

8. Although the Court "must assume the truth of the material facts as alleged in the complaint" on a motion for dismissal under Rule 12(b)(6), Jackson v. Birmingham Bd. of Educ.,

---

[12] Id. at ¶ 20.
[13] Id.

544 U.S. 167, 171 (2005) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)), the Court need not accept "conclusions of law", *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974), or "conclusory allegations or legal conclusions masquerading as factual conclusions", *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 & n.2 (5th Cir. 2006) (quoting *Drs. Bethea, Moustoukas v. St. Paul Guardian Ins.*, 376 F.3d 399, 403 (5th Cir. 2004)), nor should the Court "'strain to find inferences favorable to the plaintiffs'", *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)), and may likewise disregard "unwarranted deductions of fact", even when pleaded as factual averments. *Rios*, 444 F.3d at 421 n.2 (citing & quoting *Jones v. Alcoa Inc.*, 339 F.3d 359, 363 n.4 (5th Cir. 2003)).

9. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). A statement of fact that merely creates a suspicion that the pleader might have a right of action is insufficient. *See id*.

**B.   Copyright infringement claim against all Defendants**

10. Plaintiff has failed to state a claim for copyright infringement against all Defendants, because Plaintiff failed to plead any facts showing that Scoppa, PT USA, Patel, or Sterling both copied any of Plaintiff's allegedly copyrighted materials and wrongfully used such copies. All Plaintiff has plead is that (i) it received a set of drawings from Rago it claims are infringing copies, and (ii) that Scoppa forwarded to Plaintiff an email he himself received from Christian

containing similar drawings it alleged were infringing. In its Complaint, all that Plaintiff offers to support its claim of copyright infringement are conclusions.

11.     To prevail on a claim of copyright infringement, a plaintiff must prove ownership of the copyrighted material and copying by the alleged infringer. *Computer Mgmt. Assistance Co. v. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir.2000) (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 790 (5th Cir.1999)). A party is liable for contributory infringement when it, "with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Alcatel*, 166 F.3d at 790 (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

12.     However, not all copying by a defendant is actionable as copyright infringement. A copy is legally actionable only if the alleged infringer actually used the copyrighted material to create his own work, and substantial similarity exists between the two works. *DeCastro, Inc.*, 220 F.3d at 400 (citing *Alcatel*, 166 F.3d at 790). In addition, not all types of work are afforded copyright protection. The Copyright Act protects original works of authorship fixed in any tangible medium of expression, ranging from literary and dramatic works to motion pictures and sound recordings. 17 U.S.C. § 102(a). However, in no case does copyright protection extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work. *Id*. § 102(b).

13.     In paragraph 17 of its Complaint, Plaintiff alleged that it received drawings from Rago that it asserted were copies of its copyrighted works. In paragraph 19, it alleged that Scoppa received an email from Christian containing drawings that it asserts are also copies, and that Christian used these drawings to solicit business from Scoppa and PT USA. Furthermore, in

paragraph 19, it plead that Scoppa forwarded to Plaintiff Christian's email containing the alleged infringing drawings in order to support Scoppa's assertion that certain plans and details on the drawings were industry standards. Plaintiff only makes a conclusory assertion in paragraph 23 and 27 that Defendants copied or distributed its copyrighted works.

14.  Thus, Plaintiff has failed to plead any facts that show that Scoppa, PT USA, Patel, or Sterling copied the drawings in question, or used them in an infringing manner.

C.  **Misappropriation of trade secret claim against all Defendants**

15.  Plaintiff has failed to state a claim for misappropriation of trade secrets under Texas law. In paragraphs 39 through for 45 of its Complaint, Plaintiff brings a cause of action for appropriation of trade secrets against all the Defendants.

16.  Under Texas law, the elements of trade secret misappropriation are:

   a) A trade secret existed;

   b) The trade secret was acquired through a breach of a confidential relationship or discovered by improper means;

   c) The defendant used the trade secret without authorization from the plaintiff; and

   d) Damages.

Hyde Corp. v. Huffines, 314 S.W.2d 763, 769 (Tex. 1958); Bohnsack v. Varco, L.P., 668 F.3d 262, 279 (5th Cir. 2012). A trade secret is defined as a "'formula, pattern, device or compilation of information used in a business, which gives the owner an opportunity to obtain an advantage over his competitors who do not know or use it.'" Triple Tee Golf, Inc. v. Nike, Inc., 485 F.3d 253, 261 (5th Cir. 2007) (quoting Taco Cabana Int'l v. Two Pesos, Inc., 932 F.2d 1113, 1123 (5th Cir. 1991)); see also Hyde Corp., 314 S.W.2d at 776 (same definition with minor wording variations). Not surprisingly, secrecy is a crucial part of the definition. Luccous v. J. C. Kinley Co., 376 S.W.2d 336, 338 (Tex. 1964); Boeing Co. v. Abbott, No. 03-10-00411-CV, 2012 Tex.

App. LEXIS 1925, *15 (Tex. App.—Austin Mar. 9, 2012, pet. filed) ("[w]hile absolute secrecy is not required, a substantial element of secrecy must be demonstrated.").

### 1. Plaintiff's trade secret misappropriation claim against Scoppa

17. The Court should dismiss Plaintiff's trade secret misappropriation claim against Scoppa because Plaintiff failed to plead sufficient facts to support the third and fourth elements of such a claim.

18. In paragraphs 12 and 40 of its Complaint, Plaintiff alleged that Scoppa had access to and/or was provided "trade secret, proprietary, and confidential information, including at least know-how, design information, technical information, drawings, cost and pricing information, customer lists, and all sales data." In paragraph 43 of its Complaint, Plaintiff nakedly asserted that Scoppa disclosed this information.

19. In paragraphs 22 and 23 of its Complaint, Plaintiff alleged that Scoppa "stole" this trade secret information, and used it to solicit business for PT USA. Plaintiff alleged no facts to support this claim, only stating that it would "be revealed during discovery".

20. In the present case, there are only conclusory allegations — Plaintiff fails to plead facts showing how (i) Scoppa misused the nebulous trade secrets, (ii) those trade secrets related to the drawings he also allegedly copied, (ii) it suffered damages.

21. In *M–I LLC v. Stelly*, Judge Ellison discussed the amount of detail necessary to support a claim of trade secret misappropriation. In that case, the plaintiff alleged that the defendant (i) took trade secret information about 14 tool designs, which it confirmed via forensic examination of the defendant's external storage devices, (ii) then left the employ of the plaintiff, and (iii) then formed a new company which allegedly used those new designs to build their own tools. 733 F.Supp. 2d 759, 773-74 (S.D. Tex 2010). In comparing what Plaintiffs plead in there complaint versus *M–I, LLC*, there is an obvious difference as to the sufficiency of the facts plead.

### 2. Plaintiff's trade secret misappropriation claim against PT USA, Patel, and Sterling

22. The Court should also dismiss Plaintiff's trade secret misappropriation claim against PT USA, Patel, and Sterling because Plaintiff failed to plead sufficient facts to support the second through fourth elements of such a claim.

23. Plaintiff's only allegation to support the second and third elements of its claim against PT USA, Patel, and Sterling is an allegation in paragraphs 34 and 43 of its Complaint that Scoppa had an agency relationship with PT USA, Patel and Sterling. Plaintiff failed to plead facts showing that (i) PT USA, Patel, or Sterling wrongfully acquired Plaintiff's trade secrets, (ii) it used those trade secrets without authorization, and (iii) as a result it suffered damages.

### D. Conversion claim against all Defendants

24. Plaintiff has failed to state a claim for Texas common law conversion against all Defendants; moreover, Plaintiff's claim has been preempted. In paragraphs 46 through 50 of its Complaint, Plaintiff brings a cause of action for conversion against all the Defendants. This claim is incompatible with Plaintiffs allegations that one or more Defendants may have *copied* certain materials.

25. Under Texas law, the elements of conversion are:

   a) That the plaintiff owned, possessed, or had the right to immediate possession of property;

   b) That the property was personal property subject to conversion;

   c) That a defendant wrongfully exercised dominion or control over the property to the exclusion of the owner's rights; and

   d) That the plaintiff suffered injury.

<u>Burns v. Rochon</u>, 190 S.W.3d 263, 267-68 (Tex. App.—Houston [1st Dist.] 2006, no pet.); <u>Lopez v. Lopez</u>, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.). Plaintiff has failed to state

allegations that would support at least two required elements of common law conversion in Texas, causing Plaintiff's claim for conversion to fail.

### 1. Plaintiff failed to allege that Defendants took any tangible, physical objects

26. First, Plaintiff has failed to allege that Defendants converted personal property that was subject to conversion. In Texas, conversion claims are limited to the wrongful exercise of dominion and control over tangible, physical objects. *Carson v. Dynegy*, 344 F.3d 446, 456 (5th Cir. 1982) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). Allegations of conversion that fall short of alleging the taking of tangible property are "outside the scope of Texas conversion law, which concerns only physical property." *Id*. Allegations involving intellectual property rights are outside the scope of Texas conversion law. *Id*. (rejecting a claim for conversion where it was alleged that a Microsoft Excel spreadsheet had been copied without authorization).

27. Moreover, "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.) (holding that the unauthorized copying of a trademark would not amount to conversion unless a physical document embodying the trademark had been taken); see also *XPEL Technologies Corp. v. American Filter Film Dist.*, Civil Action No. SA-08-CA-175-XR, 2008 U.S.Dist. LEXIS 60893, *13-15 (W.D. Tex. Aug. 11, 2008) (holding that Texas conversion law requires that the property allegedly taken be physical property); *CICCorp, Inc. v. Amitech Corp.*, 32 F. Supp. 2d 425, 430 n.8 (S.D. Tex. 1998) (holding that rights to an internet address cannot be converted, pointing out that the plaintiff "has not identified any authority extending liability for conversion to alleged unlawful dominion and control over intangible property such as an internet webpage address.").

### 2. **Plaintiff failed to allege that Defendants "exercised dominion or control" over Plaintiff's tangible, physical property**

28. Second, Plaintiff fails to allege that any Defendant somehow "exercised dominion or control" over its tangible property to the exclusion of Plaintiff's rights — the third required element of conversion. As a simple matter of logic, even if Defendants copied materials — but did not delete or destroy anything — they would have been unable to exercise exclusive dominion or control over Plaintiff's property, and Plaintiff still would have retained the originals. Thus, the making of a copy could not have amounted to the exclusive dominion and control of the information allegedly copied.

29. The court in *XPEL Technologies Corp.* affirmed this notion with respect to intellectual property: "[o]nly with physical property can a party exercise 'dominion and control . . . to the exclusion of' another party's rights." 2008 U.S.Dist. LEXIS 60893, at *14-15. *XPEL Technologies Corp.* involved a claim that a trademark had been converted. *Id.* at *2-5. In rejecting the conversion claim, the court explained that the copying of a trademark could not result in the exclusive dominion and control of the trademark, since the owner of the trademark would still have access to it. *Id.* at *15.

### 3. **Plaintiff's claim for conversion of allegedly copyrighted material is preempted by federal law**

30. Moreover, in addition to the fatal defects of Plaintiff's state law claim for conversion, it is also preempted by federal law. Plaintiff alleges in paragraph 26 and elsewhere that its drawings are protected under United States Code Title 17 (the "Copyright Act"). To the extent the materials Plaintiff's claims have been misappropriated are protected under the Copyright act, its claim for conversion would be preempted.

31. State laws are preempted under the Copyright Act if they create "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as

specified by section 106 . . . ." 17 U.S.C. § 301(a). Section 106 of the Copyright Act grants the holder of a copyright the exclusive right to reproduce, distribute, perform, and display the copyrighted work. 17 U.S.C. § 106. Application of this preemption provision is by a two–part test. *Carson*, 344 F.3d at 456. Both parts must be satisfied for there to be a preempted claim. *Id*. The cause of action first "is examined to determine whether it falls within the subject matter of copyright as defined by 17 U.S.C. § 102." *Id*. (quotation marks and citations omitted). If it does, "the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Id*. (quotation marks and citation omitted).

32.     When state law conversion claims are asserted in connection with the alleged copying of copyrighted material (without a concomitant allegation of a taking of physical property), such claims would be coextensive with and thus preempted by the Copyright Act. *Daboub v. Gibbons*, 42 F.3d 285, 288-89 (5th Cir. Tex. 1995) (applying the two–step preemption test and finding that causes of action alleging the conversion of songs where the songs had been improperly copied were preempted by the Copyright Act, citing 17 U.S.C. § 301(a), the express preemption provision in of the Copyright Act); *Carson*, 344 F.3d at 456-57 (5th Cir. Tex. 2003) (finding that a claim for conversion will be preempted when the theory of recovery merely asserts the wrongful copying of copyrighted material); *M–I LLC*, 733 F.Supp.2d at 792 (finding that plaintiff's conversion claim is preempted "to the extent that it covers tool drawings, designs, and other matter subject to copyright protection").

33.     Thus, Plaintiff's conversion claim is also preempted by the Copyright Act.

**E.      Inducement of breach of fiduciary claim against PT USA, Patel, and Sterling**

34.     Plaintiff has failed to state a claim against PT USA, Patel, and Sterling for inducement of breach of fiduciary under Texas law, as alleged in paragraph 55 of its Complaint.

35. Plaintiff has failed to state a claim for breach of fiduciary against Scoppa under Texas law. In paragraphs 39 through for 45 of its Complaint, Plaintiff brings a cause of action for appropriation of trade secrets against all the Defendants.

36. Under Texas law, the elements of a claim for breach of fiduciary duty are:

   a) The plaintiff and defendant had a fiduciary relationship;

   b) The defendant breached its fiduciary duty to the plaintiff; and

   c) The breach resulted in injury to plaintiff or benefit to defendant.

*Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999).

37. Under Texas law, with respect to inducement of breach of fiduciary duty claims, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)

38. Other than a conclusory statement in paragraph 55 of its Complaint that Patel, Sterling, and PT USA induced Scoppa's breach of his fiduciary duties by "knowingly soliciting, participating in, and profiting from such breach" and a similar statement in paragraph 61, Plaintiff pleads no facts to show that (i) Patel, Sterling, or PT USA knew that Scoppa had a fiduciary relationship with Plaintiff, and (ii) with knowledge induced Scoppa to breach it.

**F.   Tortious interference with employment contract claim against PT USA, Patel, and Sterling**

39. Plaintiff has failed to state a claim against PT USA, Patel, and Sterling for tortious interference with (Scoppa's) employment contract under Texas law, as alleged in paragraphs 58 to 62 of its Complaint.

40. Under Texas law, the elements of a cause of action for tortious interference with contract are:

a) The existence of a contract subject to interference;

b) A willful and intentional act of interference;

c) Which was a proximate cause of damage; and

d) Actual damage or loss.

*Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993).

41. To establish intent, Plaintiff must allege that the interfering party had "actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship." *Amigo Broad. v. Spanish Broad. Sys.*, 521 F.3d 472, 489 (5th Cir. 2008) (quoting *Steinmetz & Assoc., Inc. v. Crow*, 700 S.W.2d 276, 277-78 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). Merely alleging that a defendant committed certain acts is not enough for intent; instead, the acts must be performed with the "knowledge or belief that interference with a contract would result." *Southwestern Bell v. John Carlo Texas*, 843 S.W.2d 470, 472 (Tex. 1992).

42. To establish proximate cause, Plaintiff must show "the defendant took an active part in persuading a party to a contract to breach it." *Amigo Broad.*, 521 F.3d at 493 (quoting *Davis v. Hydpro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)).

43. Plaintiff fails to allege facts that show intent, causation, and damages. Other than its it recitations of the elements of its claim in paragraphs 59 to 62 of its Complaint, Plaintiff never alleged facts showing that (i) PT USA, Patel, or Sterling knew or should have known about Scoppa's contract with Plaintiff, or (ii) they acted with the knowledge or belief that it would interfere with the contract, (iii) that they took an active role in inducing Scoppa to breach his contract, or (iv) Plaintiff's actual damages.

**G. Tortious interference with existing and prospective business relations claim against all defendants**

44. Plaintiff has failed to state a claim against Defendants for tortious interference with existing and prospective business relations under Texas law, as alleged in paragraphs 63 to 68 of its Complaint.

### 1. No claim for interference with existing contract

45. Plaintiff have not plead any facts (i) identifying the contracts or the business relationship interfered with, (ii) how Defendants interfered with them, (iii) how that proximately caused Plaintiff injury, or (iv) the actual damage or loss incurred.

### 2. No claim for interference with prospective business relations

46. The elements of tortious interference with prospective business relations are:

   a) A reasonable probability that the plaintiff would have entered into a business relationship;

   b) An independently tortious or unlawful act by the defendant that prevented the relationship from occurring;

   c) The defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and

   d) The plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)).

47. To establish a "reasonable probability" of entering into a contractual relationship, more than mere negotiations must have taken place with the party to the prospective contract. *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 109 (Tex. App.—El Paso, 1997, pet. denied).

48. With respect to the second element, the Texas Supreme Court clarified:

> [T]o recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort. . . . Conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations, and we disapprove of cases that suggest the contrary.

*Id*. at 726.

49. Here again, Plaintiff fails to set forth facts showing (i) the reasonable probability that it would have entered into a business relationship with third persons, (ii) the identity of the prospective business relationship, (iii) the independently tortious or unlawful conduct, or (iv) the actual loss or damage incurred. All Plaintiff has alleged are the bare bones recitation of the elements.

**H.     Unfair competition by misappropriation claim against all Defendants is preempted**

50. Plaintiff's claim for unfair competition by misappropriation under Texas common law is preempted by the Copyright Act. Paragraphs 69 to 72 of Plaintiff's complaint alleged that Defendants unfairly misappropriated Plaintiff's drawings and gained a "free ride" and unfair advantage.

51. Under Texas law, the elements of unfair competition by misappropriation are:

 a) The creation by plaintiff of a product through extensive time, labor, skill and money;

 b) The use of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the product; and

 c) Commercial damage to plaintiff.

*United States Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214 (Tex. App.—Waco 1993, writ denied).

52. The Fifth Circuit has held that though the Copyright Act focuses on the value of creativity, while common law unfair competition focuses on the value of "sweat equity", the rights protected by both are equivalent with respect to claims about copyrighted works. *Alcatel*, 166 F.3d at 789. Thus it held that such claims were preempted. *Id*.; *M–I, LLC*, 883 F.Supp.2d at 791-92 (holding that unfair competition by misappropriation claims preempted by Copyright Act with respect to tool design drawings).

**I.  Conspiracy claim against all defendants**

    **1.  Plaintiff fails to state a claim for conspiracy**

53. Under Texas law, the elements of conspiracy are:

   a) A defendant was a member of a combination of two or more people;

   b) The object of the combination was to accomplish (a) an unlawful purpose, or (b) a lawful purpose by unlawful means;

   c) The members had a meeting of the minds on the object or course of action;

   d) One of the members committed an unlawful, overt act to further the object or course of action; and

   e) Plaintiffs suffered injury as a proximate result of the wrongful act.

*Ernst & Young v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001); *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

54. With respect to an unlawful purpose, because conspiracy itself requires intent, the underlying tort for a conspiracy must be an intentional tort. *Firestone Steel Prods. V. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996). Thus, by definition, claims sounding in negligence, such as negligent misrepresentation, cannot be the basis of a conspiracy claim. *Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005). Furthermore, principals and agents cannot conspire with each other. *See*

*Bradford v. Vento*, 48 S.W.3d 749, 761 (Tex. 2001). Naturally, if an underlying claim fails, the conspiracy claim will fail along with it. *Ernst & Young*, 51 S.W.3d at 583.

55. Plaintiff never alleged a meeting of the minds or a specific object that the alleged conspirators wanted to accomplish. In paragraph 74 of its complaint, Plaintiff merely alleged that Defendants "acted together pursuant to an agreement to accomplish an unlawful objective by unlawful means." Plaintiff does not allege any specific act or omission by an individual Defendant.

### 2. Plaintiff's conspiracy claim does not comply with the pleading requirements of Rule 9(b)

56. The Fifth Circuit has held that civil conspiracy to commit a tort sounds in fraud and is governed by the Rule 9(b)'s particularity requirements. *Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 960 (5th Cir. 1994). Rule 9(b) requires that "the who, what, when, and where must be laid". *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

57. Plaintiff fails to plead with the particularity required by Rule 9(b) and fails to "segregate the alleged wrongdoing of one from those of another." *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001). Alleging that conspired to commit the tortious acts alleged in Plaintiff's Complaint without more does not put any Defendant on notice of the claim against him or it.

### 3. Plaintiff's conspiracy claim with respect to copyright infringement is preempted

58. To the extent that Plaintiff's conspiracy claim implicates its claim for copyright infringement, it is preempted.4

59. Although civil conspiracy requires an element of knowledge and planning, this element does not make it qualitatively different from a claim under the Copyright Act. *M–I LLC*, 733 F.Supp.2d 759. In *Warren Sign Co., Inc. v. Piros Signs, Inc.*, the court wrote "'[b]ecause

copyright law already recognizes the concepts of contributory infringement and vicarious copyright infringement concepts, which extend joint and several liability to those who participate in the copyright infringement, a civil conspiracy claim does not add substantively to the underlying federal copyright claim and should therefore be preempted.'" 2010 U.S. Dist. LEXIS 70917, at *10-11 (E.D.Mo. July 15, 2010) (quoting *Irwin v. ZDF Enterprises GmbH*, 2006 U.S. Dist. LEXIS 6156, at *11-12 (S.D.N.Y. Feb. 16, 2006)).

**WHEREFORE, PREMISES CONSIDERED**, Defendants pray that the Court enter an order dismissing Plaintiff's *Original Petition*, and for all other relief to which they are justly entitled.

THE SHEENA LAW FIRM

By: /s/ *Danny M. Sheena*
DANNY M. SHEENA, P.E.
State Bar No. 00792830
S.D. Texas Attorney No. 19110
Danny@sheenalawfirm.com
HUNG MICHAEL NGUYEN
State Bar No. 24056040
S.D. Tex. Atty. No. 711423
mike@sheenalawfirm.com
2500 West Loop South, Suite 518
Houston, Texas 77027-4508
(713) 224-6508
(713) 225-1560 Facsimile
**ATTORNEY FOR DEFENDANTS PETER SCOPPA, SANDEEP N. PATEL, THE STERLING ENGINEERING GROUP OF COMPANIES, AND PT USA**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November, 2013, a true and correct copy of *Defendants' Motion to Dismiss* was sent to all parties requesting notification through the Court's ECF system.

> John R. Keville
> John E. O'Neill
> Erin C. Villaseñor
> WINSTON & STRAWN LLP
> 1111 Louisiana Street, 25th Floor
> Houston, Texas 77002-5009
> (713) 651-2600
> (713) 651-2700 Facsimile
> **ATTORNEYS FOR PLAINTIFF**
> **SUNCOAST POST–TENSION, LTD.**

/s/ *Danny M. Sheena*
Danny M. Sheena